IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**KAREN GATES**                                                        **PLAINTIFF**

vs.                                    CIVIL ACTION NO.: **3:23-cv-225**-CWR-MTP

**THE CENTRAL MISSISSIPPI PLANNING AND
DEVELOPMENT DISTRICT AND JOHN DOES 1-10
DEFENDANTS**

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

COMES NOW, the Plaintiff, Karen Gates (hereafter "Plaintiff") by and through undersigned counsel of record and files this Complaint against the Defendants, The Central Mississippi Planning and Development District ("CMPDD"), for cause would show unto this Honorable Court the following, to wit:

**NATURE OF THE ACTION**

1.   This is an employment discrimination action, brought pursuant to the provisions of the Title VII of the Civil Rights Act of 1967, as amended, 42 U.S.C. § 2000e-5 ("Title VII"), 42 U.S.C. § 1983 ("Section 1983"), and 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section, 1981"), and Mississippi common law.

**PARTIES**

2.   The Plaintiff, KAREN GATES, is an adult resident of the state of Mississippi.

3.   Defendant, Central Mississippi Planning and Development District ("CMPDD"), is a Non-Profit Corporation and may be served with process at its registered agent for service of process, JAMES H HERRING, who can be located at 1020 Centre Pointe Blvd. Pearl, MS 39208.

4.   Defendants, John Does 1-10 are individuals and/or entities who may be liable for Plaintiff's damages.

1

**JURISDICTION AND VENUE**

5.  The United States District Court for the Southern District of Mississippi has jurisdiction over the subject matter of this action pursuant to the nature of the claims made and the basis of this suit.

6.  Venue is proper in the Northern Division of the United States District Court for the Southern District of Mississippi.

**FACTS**

7.  The Plaintiff adopts and herein incorporates by reference each and every allegation as set forth above.

8.  Karen Gates is an African American woman who was a devoted employee of CMPDD for more than twenty-one years.

9.  In October 2016, her responsibilities were expanded to include the CMPDD Internship Program. It was not until July 2, 2020, that Ms. Gates received a formal description of the Internship Program Responsibilities. Nevertheless, CMPDD never gave Ms. Gates any adequate training to properly fulfill her newly defined job responsibilities, even though she requested such training on several occasions.

10. CMPDD terminated the Plaintiff on , based on the subjective contention of Ms. Gates having a bad/disrespectful attitude and her purported poor job performance of tasks she was unable to execute due to a lack of training and a lack of access to information on CMPDD's computer system.

11. The composition of the CMPDD Board is not a reflection of the governing power and is a non-factor in supporting the case of diversity at CMPDD.

12. Art the time of her termination, the thirteen African Americans on the Board were not deliberately selected by CMPDD leadership- but were elected by the constituents in the municipalities served by CMPDD, which are overwhelmingly African-American.

In actuality, the CMPDD's workforce has the following racial makeup:

- Planning and Management: 18 employees – 1 B/M, 0 B/F, *(13 W/M, 4 W/F)*
- Finance: 10 employees – 1 B/M, 1 B/F *(6 W/F, 2 W/M)*
- Workforce Development – Pearl Bldg. Staff: 5 Employees: 1 B/M, 0 B/F *(4 W/F)*
- Aging Services – 100% African American – Lowest Salaried Employees (8 B/F)
- Medicaid Waiver – 80% African American (Approx. 41 Staff / 0 Employees in Pearl Bldg)
- CEO, Administrative Assistant, Receptionist – 100% Caucasian Staff

13. Ms. Gates assumed the role of Project Manager at CMPDD in 2016, where she was responsible for the Internship Program, among other things. However, she was given oversight of the Internship Program with no clear direction of her role or assignments. Her responsibilities evolved over time through verbal conversations as her duties were initially shared among other CMPDD staff with various expertise.

14. CMPDD provided Ms. Gates with an outline of her job duties in a July 2, 2020, memo. The fact that CMPDD felt it necessary to provide an exhaustive list of job responsibilities to Ms. Gates four years after she assumed the position is further evidence that 1) she was woefully undertrained; 2) she was given no clear job descriptions prior to this time; and 3) this was a sham way to document Ms. Gates' personnel file with negative information, a mere six months prior to her termination.

15. Moreover, Ms. Gates' white co-workers were given advanced knowledge of the BKD audit and were given an opportunity by CMPDD leadership to rectify any errors in their work. Conversely, Ms. Gates was not given a similar opportunity to make any corrections, and she was ultimately terminated because of her purported errors.

3

16. Furthermore, the auditors from BKD had access to a substantial amount of information that CMPDD knows that Ms. Gates was never privy to, due to her lack of training and her lack of security clearance. Nevertheless, CMPDD relies on her claimed failures for things they acknowledge she was not trained to do or had access to. Remarkably, they devote considerable time in their position statement to this point. This type of disparate treatment plagued the past few years of Ms. Gates' employment, including but not limited to trainings and meetings extended to her white counterparts, to the exclusion of black employees.

### COUNT ONE- 42 U.S.C. §1981 RACIAL DISCRIMINATION

17. The Plaintiff adopts and herein incorporates by reference each and every allegation as set forth above.

18. As stated herein, the Defendant continued in their discriminatory practices in the form of extending employment terms and the enforcement of those terms to African American employees such as the Plaintiff, that are discriminatory.

19. The Plaintiff herein alleges that the Defendants' discriminatory practices include, but are not limited to, discrimination in the negotiation, formation, execution, and termination of employment contracts as alleged in this Complaint. Plaintiff seeks equitable monetary relief from these practices; compensatory and punitive damages; equitable remedies of accounting, restitution and disgorgement; and an award of costs, expenses, and attorneys' fees.

20. Defendants' actions, as described above, constitutes as conduct made because of race and is in violation of racial discrimination, under 42 U.S.C. § 1981a.

21. Pursuant to 42 U.S.C. §1981a, Defendants' conduct constitutes as an intentional discrimination based on race, which is considered "disparate treatment" and are strictly prohibited.

### COUNT TWO- TITLE VII OF THE CIVIL RIGHTS ACT OF 1967, AS AMENDED, 42 U.S.C. § 2000E-5 RACIAL DISCRIMINATION

22.     The Plaintiff adopts and herein incorporates by reference each and every allegation as set forth above.

23.     The Plaintiff has filed a charge before the United States Equal Employment Opportunity Commission (EEOC) relating to her claim of employment discrimination for being terminated based on her race. The EEOC has issued its right to sue letter, and this action has been timely filed.

24.     Defendant's actions, as described above, constitutes as conduct made because of race and is in violation of racial discrimination, under 42 U.S.C. § 2000E-5.  Pursuant to 42 U.S.C. § 2000E-5, MSOS' conduct constitutes as an intentional discrimination based on race, which is considered "disparate treatment" and "retaliatory" in nature, and are strictly prohibited.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A.      A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of Mississippi;

B.      An injunction and order permanently restraining Defendants from engaging in such unlawful;

C.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

D.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment;

E.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

F.  An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

G.  An award of punitive damages;

H.  An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

I.  Such other and further relief as the Court may deem just and proper.

Respectfully submitted this the 29th day of March 2023

**KAREN GATES**

By: ___/s/John C. Hall, II_

JOHN C. HALL, II

OF COUNSEL:
JOHN C. HALL, II (MSB#: 99384)
THE HALL LAW GROUP, PLLC
263 E. PEARL ST.
JACKSON, MS 39201
Office: (601) 398-2089
Fax: (601) 812-6266
E-mail: jhall@halllawgrp.com
*Attorney for Plaintiff*